# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0400, <u>State of New Hampshire v. Rey DeJesus</u>, the court on August 12, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, Rey DeJesus, filed a motion for a new trial based on the alleged ineffective assistance of his trial counsel. He appeals the order of the Superior Court (<u>Temple</u>, J.) that denied his motion. We affirm.

I.      <u>Background</u>

The jury heard the following evidence. In 2019, the victim lived with her mother in a two-bedroom apartment. On the night of the assaults that led to his convictions, the defendant, who was a family friend, stopped by their home around midnight. The victim's mother and her friend were on the outdoor porch. The victim and her best friend were in the victim's bedroom. The defendant played dominoes with the victim's mother and her friend. Although the defendant asked the victim on several occasions that night to fill a bowl with marijuana for him to smoke, she did not do so.

As the night progressed, the victim's friend went home and the victim played a round of dominoes on the porch. She then went inside, telling her mother that she was going to get a coat. She went to her room and closed and locked the door. Shortly thereafter, the defendant knocked on her door and again asked her to fill a bowl with marijuana for him. The victim let him in and began to fill a bowl for him. At that point, the defendant grabbed her from behind and sexually assaulted her. Because neither the victim nor the defendant had returned to the porch, her mother came inside to check, thinking that it was taking the victim "too long just to grab a jacket." The victim's mother knocked on the door. The defendant stopped the assaults when he heard the victim's mother at the door. The victim's mother unlocked the door, entered the room, and demanded that the defendant leave the room.

After the defendant left, the victim began crying and told her mother, "I think I just got raped." After her mother left the room to confront the defendant, the victim texted her best friend, "bitch I just got raped." Her friend did not respond because she was already asleep. The victim then called her boyfriend.

She was crying and struggling to breathe and told him that "one of [her] mom's closest friends just raped [her]."

The victim's boyfriend arrived at the apartment and drove the victim and her mother to the hospital. The victim was examined by a sexual assault team and by an emergency room doctor. A sexual assault kit was completed but, at her request, the victim was not identified when the kit was provided to the local police department. The victim did not immediately report the assaults to the police. Several weeks later the defendant appeared twice at her apartment, and banged on the door and asked her to talk. Three or four days later, the victim reported the sexual assaults to the police.

As a result of a police investigation, the defendant was indicted on eight counts of aggravated felonious sexual assault (AFSA) and two counts of felonious sexual assault (FSA). The ten indictments charged five separate acts under the alternative theories that the acts were committed either through the use of force or without consent. The AFSA indictments charged two acts of digital penetration, one act of intercourse, and one act of cunnilingus. The FSA indictments charged, under alternative theories, that the defendant put his mouth on the victim's breast.

The defendant's theory at trial was that the victim was lying because, although there had been "a sexual encounter," it was "entirely consensual." Following trial, he was convicted on those alternative counts of AFSA that alleged intercourse and cunnilingus but acquitted on those that alleged digital penetration. He was also acquitted on both FSA charges.

After his conviction and retention of new counsel, the defendant filed a motion for new trial, citing multiple instances in which his trial counsel had allegedly provided constitutionally ineffective assistance both prior to and at trial. Following a hearing, the trial court denied the motion. This appeal followed.

II.    <u>Analysis</u>

On appeal, the defendant argues that his trial counsel provided constitutionally ineffective assistance: (1) when counsel failed to object to testimony by the victim's friend about the text in which the victim reported that she had been raped; and (2) when counsel failed to object to certain portions of testimony by the emergency room doctor about physical evidence of strangulation.

Part I, Article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant reasonably effective assistance of counsel. N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. To prevail upon his claim of ineffective assistance of counsel, the defendant must demonstrate, first, that his trial attorney's

representation was constitutionally deficient and, second, that his counsel's deficient performance actually prejudiced the outcome of the case. State v. Chandler, 176 N.H. 216, 229 (2023). The ineffective assistance of counsel analysis involves mixed questions of law and fact. Id. We will not disturb the trial court's factual findings unless they are not supported by the record or are erroneous as a matter of law, but we review the ultimate determination of whether each prong is met de novo. Id. Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both the State and Federal Constitutions, we examine the constitutional competency of counsel's performance under the State Constitution, and rely upon federal case law only for guidance. Id.

When examining whether trial counsel's performance was constitutionally deficient, we afford broad discretion to trial counsel when determining a trial strategy and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Eschenbrenner, 164 N.H. 532, 539 (2013) (quotation omitted). To satisfy the second prong, the defendant must demonstrate actual prejudice by showing that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. Id. at 540. Failure to establish either prong requires a finding that counsel's performance was not constitutionally deficient. State v. Fitzgerald, 173 N.H. 564, 573 (2020).

We turn first to the defendant's challenge based on his trial counsel's failure to object to testimony from the victim's best friend about the victim's text message in which she reported that she had been raped. The trial court ruled that the challenged testimony constituted inadmissible hearsay and "likely should have been objected to by" trial counsel but that the defendant had not demonstrated "that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the trial[] would have been different." (Quotation and citation omitted.) The trial court based its conclusion on the victim's testimony which preceded that of her friend, in which she described the sexual assaults committed by the defendant.

The defendant argues that the trial court's conclusion incorrectly assumes that the jury believed the victim's trial testimony about the assault. The defendant asserts that the jury might have credited the victim's account because she made the same accusation in the text to her friend. Further, the defendant rejects the proposition that the challenged testimony was cumulative because, unlike the evidence that the victim reported the rape to her mother and boyfriend, which cohered with the defense theory that the victim fabricated the allegations to explain a "quickly regretted consensual sexual encounter," the victim's friend's testimony could have been regarded by the jury "as powerful corroborating evidence of the truth of the accusation." The defendant argues that

3

the victim "would have no reason to involve her best friend, so soon after the event, in a false allegation of rape."

We agree with the trial court's conclusion that the defendant has failed to meet his burden under the prejudice prong. The victim already testified that she had sent the text prior to the limited testimony of her friend. Further, the jury also heard testimony from the victim's mother, the victim's boyfriend, and the sexual assault nurse examiner that the victim had reported to each immediately after the assault that the defendant had raped her. Given the number of other witnesses who also testified that the victim had reported on the same night that the defendant had raped her, the limited testimony of her friend was cumulative and did not create a reasonable probability that the result of the proceeding would have been different had it not been admitted. Eschenbrenner, 164 N.H. at 539. Because we conclude that the defendant has failed to demonstrate that the trial result would have been different had his counsel objected to this testimony, we need not determine whether trial counsel's failure to object to the challenged testimony was constitutionally deficient. See id. at 540 ("When we determine that a defendant has failed to meet either prong of the test, we need not consider the other one.").

We observe that the defendant also argues in his brief that trial counsel was ineffective for failing to object to the victim's testimony that she sent the text message to her friend. This argument was not made as part of the defendant's motion for new trial. Accordingly, the defendant has not demonstrated that the argument is preserved for our review, and we decline to address it. See State v. Leroux, 175 N.H. 204, 209 (2022) (stating that "the defendant, as the appealing party, bears the burden of demonstrating that he specifically raised the arguments articulated in his appellate brief before the [trial] court").

The defendant also argues that his trial counsel provided ineffective assistance when he failed to object to certain portions of testimony by the emergency room doctor about physical evidence of strangulation. The defendant contends that because his trial counsel had called the doctor only as a fact witness, his counsel should have objected when the State elicited alleged expert-opinion testimony from her on cross-examination, and that counsel's failure to do so prejudiced his case.

We conclude that we need not determine whether trial counsel's failure to object was constitutionally deficient because it did not prejudice the defendant's case. The defendant asserts that he called the doctor as a witness for the limited purpose of challenging the victim's credibility regarding her report to the doctor that the defendant had strangled her. The doctor testified on direct examination that she had examined the victim's neck and found no evidence of trauma and therefore did not order additional screening. On cross-examination, the doctor testified that the victim had reported a "strangulation," which the doctor defined as any holding of the neck or pressure applied to it. The doctor testified that the

4

absence of symptoms was "not inconsistent with somebody who has been strangled." The defendant argues that this testimony constituted expert testimony and, given the apparent failure to qualify her as an expert, it was inadmissible. The defendant argues that this testimony undermined "a crucial disputed point" — whether the victim's report that she had been strangled was true.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). We cannot conclude that failing to object to the doctor's testimony on cross-examination so jeopardized the result of the trial. The jury was able to observe the victim during her testimony and assess her credibility, as well as consider descriptions by other witnesses of her demeanor immediately following the assaults. The victim's mother testified that, upon entering the room after the assaults, the victim was "[t]rembling" with "[t]ears pouring down her face." A friend of the victim's mother observed the victim shortly after the assaults and testified that the victim was "kind of hysterical" and "heavily crying." The victim's boyfriend testified that when the victim called him soon after the assaults she "was very upset," crying, and had trouble mustering words. The emergency room nurse who examined the victim on the night of the assaults testified that the victim "was obviously very distraught" and "tearful." In light of all the other evidence, the challenged testimony did not meaningfully bolster the victim's credibility.

In sum, we conclude that the defendant has not demonstrated that actual prejudice resulted from the failure to object to the doctor's cross-examination testimony. Eschenbrenner, 164 N.H. at 539. Given this conclusion, we need not determine whether trial counsel's failure to object to it was constitutionally deficient. See id. at 540.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**